UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DOUG HILLER and JENNIFER
HILLER,

                    Plaintiffs,

       v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE CO.,

                    Defendant.

NO:  11-CV-0291-TOR

ORDER RE: SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 38 and 45).  The Court heard oral argument on these motions on June 11, 2012.  Robert K. Hunter, Jr. appeared on behalf of the Plaintiffs.  Michael S. Rogers appeared on behalf of the Defendant.  Also before the Court are Defendant's Motion to Exclude Testimony of Expert Thorne (ECF No. 34) and Plaintiffs' Motion to Expedite (ECF No. 70).  The Court has reviewed the motions, the responses, the replies, and the record and files herein and is fully informed.

ORDER RE: SUMMARY JUDGMENT ~ 1

BACKGROUND

This is an insurance coverage action arising from water damage to the basement of Plaintiffs' residence.  Plaintiffs sought reimbursement for the loss under their homeowners' insurance policy issued by Defendant.  Defendant denied the claim on the ground that the cause of the loss was an excluded peril under the terms of the policy.  Plaintiffs subsequently filed this lawsuit seeking (1) a judicial declaration that the loss is covered under the policy, and (2) damages for wrongful claims handling under the Washington Consumer Protection Act.  Both parties have moved for summary judgment.

FACTS

Plaintiffs Doug and Jennifer Hiller ("the Hillers") reside in Wenatchee, Washington.  In December 2006, the Hillers purchased a newly-constructed home from BOA Construction.  Hiller Decl., ECF No. 48, at ¶ 2.  Shortly after purchasing the home, the Hillers purchased an "all-risk" homeowners' insurance policy from Defendant Allstate Property and Casualty Insurance Co. ("Allstate").  This policy was subsequently renewed to provide coverage during the times relevant to this lawsuit.  Hunter Decl., ECF No. 50-2, at 2.

On July 9, 2010, Doug Hiller ("Hiller") discovered that the carpet in the basement of the residence was saturated with water.  Hiller immediately notified Allstate of the problem.  Hiller Decl., ECF No. 48, at ¶ 3.  Allstate opened a claim

and asked Hiller to attempt to determine the source of the water intrusion.  Hiller

Decl., ECF No. 48, at ¶ 3.  Pursuant to this request, Hiller began to test several

theories.  At some point during this initial investigation, Hiller poured water into a

downspout drain located at the northwest corner of the residence using a garden

hose.  Hiller Dep., ECF No. 43, at 26.  He discovered almost immediately that this

caused water to leak into the northwest corner of the home's basement.  Hiller

Dep., ECF No. 43, at 26.[1]

On July 16, 2010, Hiller began a more thorough investigation of the leak

with Greg Smith ("Smith"), the home's original excavation contractor.  Hiller

Dep., ECF No. 43, at 30-31.  Hiller and Smith excavated an area around the

northwest downspout drain and discovered two problems.  First, they discovered

that the end of the drain pipe was partially blocked by rocks and had been wrapped

with fabric landscaping material.  ECF No. 40 at ¶ 7.  Second, they discovered that

a "T" pipe installed at the foot of the drain was directing water toward the house's

---

[1] Hiller tested the downspout drains located on the east side of the home in a
similar manner.  Hiller Dep., ECF No. 43, at 27.  This testing caused water to come
back up to the surface, but did not cause water to leak into the basement.  Hiller
Dep., ECF No. 43, at 27.

1    concrete foundation.  Hiller Dep., ECF No. 43, at 34-36.[2]  Recognizing that these

2    conditions were the most likely source of the water intrusion, Hiller and Smith

3    photographed the drain and later repaired it.  Hiller Dep., ECF No. 43, at 31, 44-

4    47.

5            On August 11, 2010, Hiller contacted Allstate about his pending claim.  In

6    an email to claims adjuster Sidney Sumulong ("Sumulong"), Hiller advised

7    Allstate that he had excavated the storm drain at the northwest corner of the

8    residence and confirmed that it was the source of the water intrusion.  ECF No. 42

9    at 77.  Hiller described the problems with the drain as "Construction Defect[s],"

10   and commented that the system was "totally designed to fail."  ECF No. 42 at 77.

11   In a forwarded portion of the email, Hiller described the problem as being

12   "cause[d] by error in the design and installation of the storm drainage system.

13   There are several issues, all related to construction[.]"  ECF No. 42 at 77.

14   Attached to Hiller's email were several photographs that Hiller and Smith had

15   taken during their excavation of the drain.  ECF No. 42 at 77.

16

17   _____

18   [2] Hiller and Smith also excavated the storm drains located on the east side of the

19   residence and determined that they too were partially blocked and wrapped with

20   fabric landscaping material.  Hiller Dep., ECF No. 43 at 27.

ORDER RE: SUMMARY JUDGMENT ~ 4

On August 20, 2010, Sumulong telephoned Hiller to discuss Hiller's email and coverage under the policy. ECF No. 40 at ¶ 47. When Hiller did not answer the call, Sumulong left a voicemail message. ECF No. 40 at ¶ 47. After receiving no response to his message, Sumulong mailed a letter advising Hiller that Allstate's investigation of the loss was continuing. ECF No. 40 at ¶ 48. On August 31, 2010, Allstate received word that Hiller had retained an attorney to represent him in the claims-handling process. ECF No. 40 at ¶ 49. Allstate reassigned the claim to adjuster Gene Menke ("Menke") later the same day. ECF No. 40 at ¶ 50.

On September 3, 2010, Menke informed the Hillers' attorney that the loss was not covered under the Allstate policy. ECF No. 40 at ¶ 51. At the attorney's request, Menke outlined Allstate's reasons for denying the claim in a letter dated September 4, 2010. ECF No. 42 at 102-03. In this letter, Menke explained that, based upon the information provided by Hiller about the source of the water intrusion, coverage was excluded under the policy's surface water, subsurface water, inherent vice, and latent defect exclusions. ECF No. 42 at 102-03.

Hiller subsequently hired an independent public adjuster in an apparent attempt to convince Allstate to reverse its coverage decision. ECF No. 42 at 68. On October 25, 2010, this public adjuster mailed a sworn proof of loss statement to Allstate in which he outlined the estimated cost of returning the home to its pre-

ORDER RE: SUMMARY JUDGMENT ~ 5

loss condition.  ECF No. 42 at 17-18.  This document noted that the cause and

origin of the loss were "to be determined."  ECF No. 42 at 18.  On November 2,

2010, Menke mailed a letter to the public adjuster advising him that, despite its

prior denial, Allstate was willing to re-open the claim.  ECF No. 42 at 15.  Menke

further requested that an Allstate investigator be permitted to inspect the home in

person.  ECF No. 42 at 15.

Allstate subsequently hired a forensic engineer, Robert Lauderbach

("Lauderbach"), to inspect the residence.  On December 16, 2010, Lauderbach

inspected the residence with the Hillers' public adjuster in attendance.  ECF No. 40

at ¶¶ 56-60.  In a detailed report dated January 5, 2011, Lauderbach concluded,

*inter alia*:

> The reported water infiltration of the basement area of the home is most
> likely the result of one or more failures of the foundation perimeter and/or
> roof drainage systems to properly transport normal and expected
> precipitation to their designed outfall locations.

> \*   \*   \*

> Based upon the reported findings of Mr. Hiller during his remediation
> actions it is most likely that the failure(s) of the foundation perimeter and
> roof drainage systems were the result of improper construction of the
> original perimeter foundation drain lines, foundation water proofing,
> downspout drain lines, and/or gravel dry wells.

ECF No. 42 at 173-74.

Based upon Lauderbach's findings, Allstate denied the Hillers' claim for a

second time on January 12, 2011.  In a letter addressed to the Hillers' attorney,

ORDER RE: SUMMARY JUDGMENT ~ 6

Allstate reiterated that the loss was "the result of improper construction," and explained that coverage was excluded under the policy's exclusions for damage caused by: (1) water backing up through a sewer or drain; (2) water overflowing from a sump pump or other system designed to drain water away from the structure; (3) surface water; (4) subsurface water; (5) earth movement; (6) inherent vice; (7) latent defect; (8) weather conditions; and (9) mold, fungus, wet rot, and dry rot.  ECF No. 42 at 176-77.

In mid-January of 2011, Hiller discovered that water had again leaked into the basement of the residence.  Hiller Dep., ECF No. 43, at 74-75.  In an attempt to locate the source of the water intrusion, Hiller dug around the foundation at the northeast corner of the residence.  Hiller Dep., ECF No. 43, at 77.  As a result of this digging, Hiller discovered that the foundation had not been treated with waterproof sealant and that several concrete form pins were still in place.  Hiller Dep., ECF No. 43, at 77-79.  This discovery led Hiller to conclude that groundwater was penetrating the concrete foundation through an unsealed hole created by one of the concrete form pins.  Hiller Dep., ECF No. 43, at 83, 91.  Because the home had not sustained any additional damage, however, Hiller did not file a new claim or report his findings to Allstate.  Hiller Dep., ECF No. 43, at 76-77, 79.

ORDER RE: SUMMARY JUDGMENT ~ 7

On January 21, 2011, Hiller hired a geologist, Douglas McFarland ("McFarland"), to further investigate the source of the January 2011 leak.[3]  While visiting the premises, McFarland observed that no waterproof sealant had been applied to the concrete foundation, and that, as a result, "[t]he steel tabs which had been used to secure the [concrete] forms . . . were rusting, thus providing a pathway for water to enter the basement."  ECF No. 50-5 at 3.  McFarland also made the following observation with respect to the home's rainwater drainage system: "As presently constructed, runoff and shallow groundwater are allowed to saturate the soil adjacent to the basement walls and enter the basement."  ECF No. 50-5 at 3.  Accordingly, McFarland concluded:

> [T]he property damage is due to an inadequate and poorly designed and constructed drainage system, combined with the total lack of sealant on the exterior of the basement foundation walls.
>
> I recommend that the basement walls be sealed and that a properly designed drainage system be installed, which allows water to enter the perforated drain pipe and exit into a properly designed dump or drain field capable of handling increased volume.

ECF No. 50-5 at 3-4.

---

[3] It appears that Hiller's primary purpose in hiring this consultant was simply to document the homebuilder's negligence in failing to apply waterproof sealant to the concrete foundation.  There is nothing to indicate that this investigation was initiated in response to the prior investigation performed by Lauderbach.

ORDER RE: SUMMARY JUDGMENT ~ 8

The Hillers filed this lawsuit on July 6, 2011, seeking (1) a declaratory judgment that the claimed loss is covered under their insurance policy, and (2) monetary damages for wrongful claims handling in violation of the Washington Consumer Protection Act.  The parties have since filed cross-motions for summary judgment on both of the Hiller's claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a moving party demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the affidavits, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When parties file simultaneous cross-motions for summary judgment, the court must consider the materials identified and submitted in conjunction with both motions before ruling on either.  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

For purposes of a summary judgment motion, a fact is "material" if it might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A dispute is "genuine" as to a material

fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

DISCUSSION

**I.    Insurance Coverage Dispute**

There is no genuine dispute about the cause of the claimed loss. Both parties agree that the water damage to the Hillers' basement was caused by defective construction of the home's rainwater drainage system. The parties also agree that the builder's failure to apply waterproof sealant to the home's concrete foundation likely exacerbated the problem. Accordingly, the only relevant question for purposes of the instant cross-motions for summary judgment is whether a loss caused by defective construction is covered under the Hillers' "all risk" insurance policy. As discussed below, this question requires the court to interpret the language of the policy and to apply Washington's "efficient proximate cause" rule.

A. <u>Policy Interpretation</u>

In Washington, the interpretation of an insurance policy is a pure question of law. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 730, 837 P.2d 1000, 1003 (1992). In general, "[t]he determination of whether coverage exists is a

1  two-step process: first, the insured must show the policy covers his loss; second, to

2  avoid coverage, the insurer must show specific policy language excludes the

3  insured's loss." *Wright v. Safeco Ins. Co. of Am.*, 124 Wash. App. 263, 271, 109

4  P.3d 1, 5 (2004). Where, as in the instant case, the insurance policy at issue is an

5  "all-risk" policy, any event which is not specifically excluded under the terms of

6  the policy will be covered. *Villella v. Pub. Emp. Mut. Ins. Co.*, 106 Wash.2d 806,

7  816, 725 P.2d 957, 962 (1986) ("In the case of all risk homeowners insurance, the

8  peril insured against would be any peril that is not specifically excluded.");

9  *McDonald*, 119 Wash.2d at 734, 837 P.2d 1005 (noting that "the structure of an

10 all-risk homeowners' insurance policy consists of a grant of coverage

11 counterbalanced by coverage exclusions").

12    B. The Efficient Proximate Cause Rule

13        Washington follows the "efficient proximate cause" rule of causation in the

14 insurance context. *Graham v. Pub. Emp. Mut. Ins. Co.*, 98 Wash.2d 533, 538, 656

15 P.2d 1077 (1983). This rule provides that "where a peril specifically insured

16 against sets other causes into motion which, in an unbroken sequence, produce the

17 result for which recovery is sought, the loss is covered, even though other events

18 within the chain of causation are excluded from coverage." *Wright*, 124 Wash.

19 App. at 731, 837 P.3d at 1004. Stated differently, "where an insured risk itself sets

20 into operation a chain of causation in which the last step may have been an

excepted risk, the excepted risk will not defeat recovery." *Villella*, 106 Wash.2d at 815, 725 P.2d at 962. An even more basic formulation of the rule is that a covered event which directly causes a non-covered loss will result in the loss being covered. *See id.* at 816, 725 P.2d at 962 (under the efficient proximate cause rule, "there is coverage for the loss if the cause which set the others in motion is an included risk"). At bottom, "if the efficient proximate cause is a covered peril, then the exclusions have no effect." *Nw. Bedding Co. v. Nat'l Fire Ins. Co. of Hartford*, 154 Wash. App. 787, 795, 225 F.3d 484, 489 (2010).

C. <u>Does the Efficient Proximate Cause Rule Provide Coverage?</u>

In this case, the Hillers argue that the water damage to their home is a covered loss by operation of the efficient proximate cause rule. In their view, the water damage was directly caused by defective construction—a covered risk—and must therefore be covered. In other words, the Hillers contend that Allstate cannot deny coverage under any of the policy exclusions cited in its January 12, 2011 denial letter because the damage to their property was directly caused by a *covered* risk.

Allstate, for its part, contends that the Hillers cannot invoke the efficient proximate cause rule. In support of this argument, Allstate notes that the efficient proximate cause rule is only triggered when "there is more than one cause of the loss, with at least one cause excluded and one cause covered." ECF No. 41 at 5.

ORDER RE: SUMMARY JUDGMENT ~ 12

According to Allstate, the efficient proximate cause rule does not apply to the

Hillers' loss because "all potential causes of the damage caused by water leaking

into [the Hillers'] basement fall within policy exclusions."  ECF No. 41 at 5.

Having reviewing the authorities cited by both parties, the Court finds that

this case presents a textbook study in the efficient proximate cause rule.  The

Washington Supreme Court has made clear that "the efficient proximate cause rule

is properly applied after (1) a determination of which single act or event is the

efficient proximate cause of the loss[;] and (2) a determination that the efficient

proximate cause of the loss is a covered peril."  *McDonald*, 119 Wash.2d at 732,

837 P.2d 1004.  As noted above, there is no genuine dispute about the efficient

proximate cause of the loss: the experts retained by both parties agree that the loss

was caused by construction defects in the form of (1) a rainwater drain system that

was improperly designed and installed; and (2) the absence of waterproof sealant

on the home's concrete foundation.  Accordingly, the dispositive inquiry for

purposes of the efficient proximate cause analysis is whether a loss caused by

defective construction is a covered peril under the policy.

Turning to this dispositive inquiry, the Court finds that a loss caused by

defective construction is in fact covered under the policy.  As the Hillers correctly

ORDER RE: SUMMARY JUDGMENT ~ 13

note, the policy does not contain an exclusion for defective construction.[4]  Given

that this peril was not "specifically excluded" from the general grant of coverage in

the Hillers' all-risk policy, it must be deemed a covered peril.  *Villella*, 106

Wash.2d at 816, 725 P.2d at 962 ("In the case of all risk homeowners insurance,

the peril insured against would be any peril that is not specifically excluded.  This

would include a building contractor's negligence in failing to provide proper

drainage.").  This conclusion is further reinforced by the fact that exclusions for

defective construction are commonly included in all-risk homeowners' insurance

policies issued in the State of Washington.  *See, e.g.*, *McDonald*, 119 Wash.2d at

728, 837 P.2d at 1002 (applying "faulty workmanship and materials exclusion"

which excluded losses "consisting of . . . defect, weakness, inadequacy, fault or

unsoundness in design, specifications, workmanship, construction, grading,

compaction, [or] materials used in construction or repair") (internal modifications

omitted); *Wright*, 124 Wash. App. at 273, 109 P.3d at 6 (applying "construction

defect exclusion" which excluded losses "caused directly or indirectly by . . .

faulty, inadequate or defective design, specifications, workmanship, repair,

---

[4]  Allstate conceded at oral argument that exclusion number 20 concerning "[a]cts
or decisions, including the failure to act or decide. . ." is inapplicable to defective
construction losses.

ORDER RE: SUMMARY JUDGMENT ~ 14

1  construction, renovation, remodeling or maintenance of property") (internal

2  modifications omitted).

3         Furthermore, the specific construction defects at issue are not excluded

4  under the policy's inherent vice or latent defect exclusions.  With regard to the

5  inherent vice exclusion, the construction defects cannot properly be characterized

6  as defects "inherent [in the] nature of the commodity which will cause it to

7  deteriorate with a lapse of time."  *Port of Seattle v. Lexington Ins. Co.*, 111 Wash.

8  App. 901, 909-10, 48 P.3d 334, 338 (2002).  Contrary to Allstate's assertions, a

9  defectively-constructed drain and a bare concrete foundation are by no means

10 analogous to bricks which crumble over an extended period of time due to repeated

11 freezing and thawing of rainwater within their pores.  *See* ECF No. 65 at 6-9

12 (citing *State Farm Fire & Cas. Co. v. Volding*, 426 S.W.2d 907 (Tex.App. 1968)).

13 Unlike the overly-porous bricks at issue in *Volding*, neither the drain nor the

14 foundation at issue in this case suffered from "internal decomposition" or

15 possessed "some quality which [brought] about its own injury or destruction."

16 *Port of Seattle*, 111 Wash. App. at 910, 48 P.3d at 339.  To the contrary, the

17 problems with both the drain and the foundation were caused by an *external*

18 source: the builder's failure to install and treat them properly.  Because the

19 defective conditions "relate to an extraneous cause," the inherent vice exclusion

20 does not apply.  *Id.*

ORDER RE: SUMMARY JUDGMENT ~ 15

1       Similarly, the construction defects at issue are not excluded under the

2   policy's latent defect exclusion.  In the property insurance context, "[a] latent

3   defect is one which could not have been discovered by inspection."  *Wright*, 124

4   Wash. App. at 278, 109 P.3d at 9 (internal quotation and citation omitted).

5   Although this "discovered by inspection" standard is admittedly vague, it is safe to

6   assume, that Washington would follow the majority rule that a "latent defect" in

7   the property insurance context is a defect "that would not be discovered by a

8   *reasonable* inspection."  *See* 11 Couch on Insurance § 153:77 (3d ed.) (emphasis

9   added); *see also Liberty Int'l Underwriters v. Carlson*, 2006 WL 2905556 at *4

10  (W.D. Wash. 2006) (unpublished) ("The court holds that a latent defect is a defect

11  that a reasonably skilled [property] owner would not discover during a reasonably

12  careful inspection.").  A latent defect is "one which could not have been discovered

13  by inspection...." *Rottinghaus v. Howell*, 35 Wash.App. 99, 108, 666 P.2d 899

14  (1983) (*citing Arrow Transp. Co. v. A.O. Smith Co*., 75 Wash.2d 843, 851, 454

15  P.2d 387 (1969)).  *See also McGinn v. North Coast Stevedoring Co*., 149 Wash. 1,

16  18, 270 P. 113, 119 (1928) (a latent defect is a concealed or hidden defect or

17  imperfection not discernible by reasonable examination such as the nature of the

18  business reasonably permits).

19      Here, both of the construction defects at issue could have been discovered by

20  a reasonable inspection.  Contrary to Allstate's assertions, extensive excavation

ORDER RE: SUMMARY JUDGMENT ~ 16

1    was not required to discover either defect.  Although much of the drain was buried

2    several feet underground, Hiller discovered its defective condition by simply

3    injecting water into it with a garden hose.  Hiller Dep., ECF No. 43, at 26.  The

4    court finds that this qualifies as a "reasonable inspection."  Similarly, while much

5    of the house's foundation was below grade, Hiller discovered the absence of

6    waterproof sealant by simply digging away topsoil from the foundation at ground

7    level.  Hiller Dep., ECF No. 43, at 77-78.  This investigation did not require

8    specialized excavation equipment nor extensive digging.  Indeed, the photographs

9    taken by the Hillers' geological expert indicate that the untreated portion of the

10   foundation could have been exposed using nothing more than a common garden

11   trowel.  ECF No. 50-5 at 9-12.  This also qualifies as a "reasonable inspection."

12   Accordingly, neither construction defect falls within the policy's latent defect

13   exclusion.

14        Finally, neither construction defect is excluded under the policy's various

15   water intrusion exclusions.  These exclusions provide, in pertinent part,

16        We do not cover loss to the property . . . caused by or resulting in any
     manner from any of the following excluded events[:]

17

18        2.  Water or any other substance that:
               a) backs up through sewers or drains; or
               b) overflows from a sump pump, sump pump well or other
19             system designed for the removal of subsurface water which is
               drained from a foundation area of a structure.

20

ORDER RE: SUMMARY JUDGMENT ~ 17

3.  Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

ECF No. 43-2 at 31-32.  Allstate contends that these exclusions "necessarily presuppose" a defect in a home's drainage system and/or waterproofing protection.  ECF No. 59 at 10.  Specifically, Allstate argues that "[a] drainage system would not back up or overflow unless it was defective or inadequate," and that "[g]round water flow[ing], seep[ing] or leak[ing] through the foundation . . . would not happen without some sort of defect."  ECF No. 59 at 10, 12.

These arguments are unpersuasive.  There are many reasons why a drain might back up or overflow even in the absence of a defect.  One of the most obvious examples is that the drain could become clogged, either with organic matter or other forms of debris.  Another example is that the drain might simply become overwhelmed by an unusually high volume of water—whether naturally-occurring or as a result of a man-made condition.  Similarly, there are a number of reasons why water might flow, seep or leak through "any part of [a] residence premise" in the absence of a defect.  For example, water could easily flow into a residence through a ground-level window that is inadvertently left open.  Water might also enter through a window that is broken during a violent weather event or through a crack in a wall caused by an earthquake.  The possibilities are virtually

endless.  Thus, reading the water intrusion exclusions to "necessarily presuppose" a defective condition is plainly inappropriate.

In sum, the Court finds that the cause of the water damage to the Hiller residence is a covered peril under the policy because (1) the policy does not specifically exclude losses caused by defective construction; and (2) the specific type of construction defects at issue—an improperly designed and installed rainwater drain system and a concrete foundation that was never treated with waterproof sealant—do not fall within any of the policy's specifically-enumerated exclusions.  Because there is no material dispute that these construction defects were the predominant cause of the loss, the water damage to the Hiller residence is a covered peril under the efficient proximate cause rule.  Accordingly, the Court grants the Hillers' motion for summary judgment as to the insurance coverage issue.

## II.    **Wrongful Claims Handling**

The Hillers have raised a variety of arguments concerning Allstate's handling of their claim.  These arguments generally fall into one of four categories: (1) that Allstate did not perform a reasonable investigation before denying the claim; (2) that Allstate did not complete its investigation of the claim within 30 days as required by statute; (3) that Allstate deliberately mislead the Hillers about the scope of coverage available under the policy; and (4) that Allstate deliberately

drafted its policies in a manner that would discourage insureds from filing claims.

It appears that the Hillers intend to pursue three causes of action stemming from

this alleged misconduct: (1) a violation of the Washington Insurance Fair Conduct

Act; (2) a *per se* violation of the Washington Consumer Protection Act; and (3)

bad faith.  *See* Pl.'s Am. Compl., ECF No. 2, at ¶¶ 4-12; Pl.'s Mot. for Summ. J.,

ECF No. 46, at 3.  For the reasons discussed below, the Hillers have failed to

establish a triable issue of fact on any of these claims.

      A. <u>Insurance Fair Conduct Act Claim</u>

      The Washington Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015,

creates a private right of action in favor of an insured whose insurance company

unreasonably denies his or her claim.  The statute provides, in relevant part, that

> Any first party claimant to a policy of insurance who is unreasonably denied
> a claim for benefits by an insurer may bring an action . . . to recover the
> actual damages sustained, together with the costs of the action, including
> reasonable attorneys' fees and litigation costs[.]

RCW 48.30.015.  The statute also specifies that a first-party claimant may sue his

or her insurance company for violating any of the claims-handling regulations

promulgated by the Washington State Office of the Insurance Commissioner at

WAC 284-30-330 *et seq*.  RCW 48.30.015(5).

      IFCA also contains an express statutory notice requirement:

> (a)  Twenty days prior to filing an action based on this section, a first party
>      claimant must provide written notice of the basis for the cause of action
>      to the insurer and office of the insurance commissioner.  Notice may be

provided by regular mail, registered mail, or certified mail with return
receipt requested.

\*  \*  \*

(b) If the insurer fails to resolve the basis for the action within the twenty-
day period after the written notice by the first party claimant, the first
party claimant may bring the action without any further notice.

(c) The first party claimant may bring an action after the required period of
time in (a) of this subsection has elapsed.

RCW 48.30.015(8).

Here, the Hillers did not provide written notice to Allstate or to the

Insurance Commissioner before filing this lawsuit.  The statutory notice

requirement is mandatory and unambiguous: "a first party claimant *must* provide

written notice of the basis for the cause of action" before suing an insurer for

damages under IFCA.  RCW 48.30.015(8)(a) (emphasis added).  Given that the

Hillers did not comply with this requirement,[5] they are not entitled to pursue an

IFCA claim.  Accordingly, the Court grants summary judgment in favor of Allstate

on this claim.

---

[5] The Hillers acknowledge they did not plead an IFCA violation in their Amended

Complaint (ECF No. 46 at 16) and therefore the claim is not properly before the

court.

ORDER RE: SUMMARY JUDGMENT ~ 21

B.  Consumer Protection Act Claims

A claim for damages under the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86.010, *et seq.*, requires a plaintiff to demonstrate: (1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) which impacts the public interest; (4) an injury to business or property; and (5) a causal link between the injury and the deceptive act or practice. *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assoc., P.L.L.C.*, 168 Wash.2d 421, 442, 228 P.3d 1260, 1269 (2010).  Here, the Hillers allege that Allstate committed *per se* violations of the CPA by violating the insurance practices regulations set forth in the Washington Administrative Code. *See* WAC 284-30-330, *et seq.*  To prevail on their *per se* CPA claims, the Hillers must demonstrate that Allstate violated one or more regulations and that it lacked a reasonable justification for its conduct.  *Am. Mfr. Mut. Ins. Co. v. Osborn*, 104 Wash. App.  686, 699, 17 P.3d 1229, 1235 (2001).

The Hillers have cited a litany of regulations allegedly violated by Allstate in their complaint.  *See* Pl.'s Am. Compl., ECF No. 2, at ¶¶ 4, 6-7, 11.  Their summary judgment briefing, however, is devoted almost entirely to alleged violations of the following three regulations: (1) WAC 284-30-350(1) (failure to disclose pertinent coverage provisions); (2) WAC 284-30-370 (failure to complete claims investigation within 30 days); and (3) WAC 284-30-330(4) (failure to

1  conduct a reasonable investigation before denying a claim).  Accordingly, the

2  Court will examine each of these regulations in turn.

3        Washington Administrative Code Section 284-30-350(1) provides:

4        No insurer shall fail to fully disclose to first party claimants all pertinent
         benefits, coverages or other provisions of an insurance policy or insurance

5        contract under which a claim is presented.

6  WAC 284-30-350(1).  The Hillers contend that Allstate violated this provision by

7  failing to inform them that the loss was covered under their policy.  This argument

8  is meritless.  There is no evidence that Allstate failed to disclose any applicable

9  coverages or policy provisions to the Hillers.  Although Allstate twice[6] denied the

10  Hillers' claim, it did so based upon a reasonable (though ultimately incorrect)

11  interpretation of the policy as a whole.  Accordingly, Allstate is entitled to

12  summary judgment on this claim.

13        Washington Administrative Code Section 284-30-370 provides:

14        Every insurer must complete its investigation of a claim within thirty days
         after notification of claim, unless the investigation cannot reasonably be

15

16  [6] It is quite clear that Allstate did not close their file a third time.  An

17  administrative error resulted in a computer entry indicating the file was closed, but

18  it was immediately reopened, in fact within minutes (ECF No. 42 at 202-03) and

19  more importantly that was not communicated to the Hillers and did not prejudice

20  their pending claim.

ORDER RE: SUMMARY JUDGMENT ~ 23

1    completed within that time. All persons involved in the investigation of a
2    claim must provide reasonable assistance to the insurer in order to facilitate
     compliance with this provision.

3    WAC 284-30-370.  The Hillers allege that Allstate violated this regulation by

4    failing to complete its investigation of the claim within thirty (30) days.  While it is

5    true that Allstate denied the claim more than thirty days after it was filed, the

6    record reflects that Allstate acted reasonably at all times while the claim was

7    pending.  Specifically, the record indicates that Hiller and the Allstate claims

8    adjuster originally assigned to the claim, Sidney Sumulong, discussed the claim

9    extensively on (Monday) July 12, 2010, two days after it was filed.  ECF No. 42 at

10   203-05.  During this conversation, Hiller informed Sumulong that the water

11   damage was likely caused by a broken pipe rather than a rainwater drainage

12   problem.  ECF No. 42 at 204.  In response, Sumulong advised Hiller to call a

13   plumber to locate the leak and there was "coverage to investigate where leak was

14   coming from."  ECF No. 42 at 205.  Hiller agreed to do so and stated he would call

15   plumber and have them inspect Thursday or Friday and Sumulong agreed to follow

16   up with Hiller later in the week.  ECF No. 42 at 204; ECF No. 63 at ¶ 4.

17        Sumulong subsequently left voicemail messages with Hiller on July 16, July

18   23 and August 10, 2010, requesting an update on the status of the investigation and

19   the extent of the property damage.  ECF No. 42 at 200-01.  Hiller did not return

20

ORDER RE: SUMMARY JUDGMENT ~ 24

1  Sumulong's calls until August 11, 2010.[7]  ECF No. 42 at 200.  At that time, Hiller

2  advised Sumulong that the water damage had been caused by a defectively

3  designed and installed drainage system.  ECF No. 42 at 200; ECF No. 63 at ¶ 8.

4  Hiller also sent several emails to Sumulong on the same date detailing the

5  investigation that he had performed with the home's original excavation contractor,

6  Greg Smith.  ECF No. 42 at 200; ECF No. 63 at ¶ 9 and Exhibit A.  The court finds

7  that Hiller's failure to communicate with Allstate between July 12 and August 11,

8  2010, substantially impeded Allstate's ability to complete its investigation of the

9  claim within 30 days.  Furthermore, Allstate tried to contact Hiller on August 20

10  and but only reached Hiller's attorney on September 3.

11      Later, when Allstate reopened Hillers' claim, weather and scheduling

12  problems reasonably delayed completion of Allstate's second look.  The Hillers

13  did not "provide reasonable assistance to the insurer in order to facilitate

14  ───────────────

15  [7] Hiller's self-serving assertion that he "always returned Mr. Sumulong's telephone

16  messages within 48 hours" (ECF No. 57 at ¶ 5) is belied by the record.  Allstate's

17  claim file does not contain any notations concerning returned calls from Hiller

18  until August 11, 2010.  ECF No. 42 at 200.  Sumulong has also unequivocally

19  denied that Hiller returned his July 16, 2010 and July 24, 2010 phone calls.  ECF

20  No. 63 at ¶¶ 5-6.

ORDER RE: SUMMARY JUDGMENT ~ 25

1   compliance" with this 30-day requirement as mandated by WAC 284-30-370.  The

2   court is not faulting the Hillers but merely recognizing that Allstate cannot perform

3   its obligations without the active assistance of the Hillers.  The court determines

4   that the investigation could not reasonably be completed, given these undisputed

5   facts, within 30 days.  Allstate is entitled to summary judgment on this claim.

6        Finally, WAC 284-30-330(4) provides that an insurer violates the CPA by

7   "[r]efusing to pay claims without conducting a reasonable investigation."  WAC

8   284-30-330(4).  The Hillers claim that Allstate's investigation of the claim was

9   unreasonable because Allstate shifted the burden of investigating the claim onto

10  the Hillers themselves.  This argument is unsupported by the record.  Indeed, the

11  record reflects that the Hillers began excavating the drain in earnest—without first

12  consulting Allstate—in an attempt to pursue recovery from the builder of the

13  home.  The record further reflects that Hiller and Smith were extremely thorough

14  in documenting the defects with the drain after it had been excavated.  Finally, the

15  record indicates that Hiller and Smith had already repaired the drain and replaced

16  the excavated earth when Hiller finally informed Allstate of the exact nature of the

17  problem on August 11, 2010.  Under these circumstances, Allstate's decision to

18  rely on the Hillers' own investigation rather than re-excavate the already repaired

19  drain, was eminently reasonable.  Accordingly, Allstate is entitled to summary

20

ORDER RE: SUMMARY JUDGMENT ~ 26

1    judgment on this claim.  None of the other alleged code violations present a triable

2    issue.

3           C. <u>Bad Faith Claim</u>

4           The Hillers allege that Allstate acted in bad faith by "deliberately draft[ing]

5    language in their policies in an attempt to circumvent Washington State's public

6    policy to afford insurance coverage to its citizens."  Pl.'s Am. Compl., ECF No. 2,

7    at ¶ 12.  As an initial matter, the Hillers have not cited any authority for the broad

8    proposition that insurance companies operating in Washington owe a duty of good

9    faith to the general public.  Accordingly, the court finds that this cause of action

10   fails to state a claim for relief.  In any event, the Court has reviewed the policy at

11   issue—which was ostensibly approved by the Washington State Office of the

12   Insurance Commissioner—and finds that it does not contain any language which

13   would patently violate public policy.  Allstate is entitled to summary judgment on

14   the Hillers' bad faith claims.

15          **MOTION TO EXCLUDE TESTIMONY OF EXPERT THORNE**

16          Defendant has moved to exclude the testimony of Plaintiffs' expert witness,

17   J. Kay Thorne, on the ground that Plaintiffs failed to produce a written expert

18   witness report pursuant to Federal Rule of Civil Procedure 26(a)(2) within the

19   deadline set forth in the court's scheduling order.  This Court issued a Bench Trial

20   Scheduling Order on October 6, 2011.  ECF No. 21.  This order established a

ORDER RE: SUMMARY JUDGMENT ~ 27

deadline of February 9, 2012, for the parties to identify expert witnesses and

exchange expert witness reports as to issues on which they bear the burden of

proof.  ECF No. 21 at 3.  On February 10, 2012, the Hillers transmitted their

Disclosure of Expert Witnesses to defense counsel via email.  This disclosure

informed defense counsel that expert witness J. Kay Thorne would testify "that

insurance coverage should be afforded under the plaintiff's homeowner's insurance

policy and that the defendant's claims handling was improper."  ECF No. 36-1 at

3.  The disclosure further stated:

> Mr. Thorne is researching insurance policies and the [D]efendant's claim file
> produced in this case.  Once his investigation is complete, he may then
> provide a written report which will be produced at that time.  In any event,
> Mr. Thorne is immediately available to offer his deposition testimony at the
> hourly rate of $350.  His curriculum vitae accompanies this disclosure.

ECF No. 36-1 at 4.  This email did not include a copy of an expert witness report

by Mr. Thorne.

The Hillers did not produce a copy of Mr. Thorne's expert witness report to

Allstate until April 20, 2012.  As of this date, Allstate had already filed the instant

motion as well as its pending motion for summary judgment.  The record also

reflects that April 20, 2012, is the same date on which the Hillers filed their

competing motion for summary judgment.

Federal Rule of Civil Procedure 26(a)(2) governs initial disclosures

pertaining to expert witness testimony.  Rule 26(a)(2)(B) requires a party offering

ORDER RE: SUMMARY JUDGMENT ~ 28

an expert witness to provide its opponent with "a written report—prepared and

signed by the witness—if the witness is one retained or specially employed to

provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). The written

report must include (1) a summary of the expert's opinions; (2) the information

upon which the witness relied in reaching his or her opinions; (3) any exhibits to be

introduced through the expert; (4) the witness's qualifications to testify as an

expert; (5) a list of prior cases in which the expert has testified; and (6) a disclosure

of the witness's compensation. Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). This

information must be supplemented as discovery progresses. Fed. R. Civ. P.

26(e)(2).

      Rule 37(c)(1) governs a party's failure to comply with discovery obligations

set forth in Rule 26(a)(2) and (e)(2). It provides, in relevant part:

> If a party fails to provide information or identify a witness as required by
> Rule 26(a) or (e), the party is not allowed to use that information or witness
> to supply evidence on a motion, at a hearing, or at trial, unless the failure
> was substantially justified or was harmless.

Fed. R. Civ. P. 37(c)(1). This rule also allows a court to impose lesser sanctions,

including the imposition of reasonable attorney's fees or "other appropriate

sanctions." Fed. R. Civ. P. 37(c)(1)(A)-(C).

      Here, the Hillers concede that the expert witness disclosure provided to

defense counsel on February 10, 2012, was deficient in that it did not contain, *inter*

*alia*, a summary of Mr. Thorne's expert opinions and the information upon which

ORDER RE: SUMMARY JUDGMENT ~ 29

1    he relied in forming those opinions.  The Hillers further concede that this

2    information was not provided to defense counsel until April 20, 2012, some

3    seventy-one (71) days after the February 9, 2012 expert witness disclosure

4    deadline.  According to the Hillers, the reason for the delay in providing this

5    information to defense counsel was that Mr. Throne "had yet to complete his

6    analysis" by the deadline.  ECF No. 52 at 3.

7            Although the Hillers acknowledge that their expert witness disclosure was

8    untimely, they contend that exclusion of Mr. Thorne as an expert witness is

9    unwarranted because Allstate was not prejudiced by the delay.  In support of this

10   argument, they note that Mr. Thorne's testimony will be limited to the issues

11   identified in their complaint, and that, in any event, Allstate's own expert witness

12   has already analyzed these same issues.  The Hillers further note that Allstate "had

13   the opportunity" to depose Mr. Throne after the disclosure of his expert witness

14   report and that "the parties could have stipulated to an extension of the discovery

15   deadline in order to allow defendant additional time to depose Mr. Thorne."  ECF

16   No. 52 at 6.  Finally, the Hillers suggest that Mr. Thorne's ability to complete his

17   analysis of the coverage issue was hindered by Allstate's failure to specifically

18   identify the cause of the property damage at issue.  ECF No. 52 at 7-8.

19   Accordingly, the Hillers suggest that a lesser sanction—namely an extension of the

20

ORDER RE: SUMMARY JUDGMENT ~ 30

1   existing discovery deadlines—would be more appropriate than excluding Mr.

2   Thorne from testifying at the upcoming trial.

3          As an initial matter, the Court rejects the Hillers' argument that Allstate was

4   required to "meet and confer" with plaintiffs' counsel before bringing this motion.

5   While it is true that a party seeking discovery must certify that he or she has

6   conferred with opposing counsel prior to filing a motion to compel (*see* Fed. R.

7   Civ. P. 37(a)(1)), this certification requirement does not apply to a motion to

8   exclude expert testimony filed pursuant to Rule 37(c)(1).  *See Hoffman v. Constr.*

9   *Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (holding that a motion

10  filed pursuant to Rule 37(c)(1) is "a motion relating to sanctions" for which no

11  prior conference with opposing counsel is required).[8]  For similar reasons, Allstate

12  was not required to file a motion to compel prior to filing the instant motion.

13  [8] The Court notes that the meet-and-confer requirement at issue in *Hoffman* was

14  imposed by local rule rather than by Rule 37 itself.  The Eastern District of

15  Washington has a local rule which is arguably broader in scope than the rule at

16  issue in *Hoffman*.  *See* LR 37.1(b) ("A motion made pursuant to Fed. R. Civ. P. 26

17  to 37 inclusive or Fed. R. Civ. P. 45 will not be heard unless the parties have

18  conferred and attempted to resolve their differences.").  Plaintiffs have not argued

19  that a conference was required under LR 37.1(b).  Nevertheless, the Court finds

20  that LR 37.1(b) does not impose such a requirement in the context of a Rule

1    The burden is upon the disclosing party to show that the failure to disclose

2    information or witnesses was justified or harmless.  *R & R Sails, Inc. v. Insurance*

3    *Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012).  The Court concludes

4    that the Hillers have not established a "substantial justification" for their failure to

5    timely produce Mr. Thorne's expert report.  First, there is no credible evidence that

6    Mr. Thorne's progress was impeded by Allstate's alleged failure to conclusively

7    determine the cause of the loss.  As Allstate correctly notes, the Hillers have not

8    submitted a declaration from Mr. Thorne explaining precisely how his analysis was

9    impeded by Allstate's actions.  Second, the Hillers have not submitted a

10   declaration from their counsel establishing (1) the date on which Mr. Thorne was

11   retained; (2) the nature and complexity of the materials that he was provided; (3)

12   the scope of the analysis that he was asked to perform; or (4) any specific

13   difficulties that Mr. Thorne encountered in preparing his report.  Third, the Hillers

14   did not seek leave of the court or permission from opposing counsel to extend the

15   deadline for disclosure of Mr. Thorne's expert witness report in advance.  In short,

16

17

---

18   37(c)(1) motion.  *See Hoffman*, 541 F.3d at 1179 ("Any local rule requiring a

19   conference prior to the court's imposition of sanctions under Rule 37(c) would be

20   inconsistent with Rule 37(c) and, therefore, unenforceable.").

ORDER RE: SUMMARY JUDGMENT ~ 32

1    the Hillers have not presented *any* credible reasons for the delay, let alone reasons

2    that would amount to "substantial justification."

3           Furthermore, the Court concludes that the delay in producing Mr. Thorne's

4    report was not "harmless."  Fed. R. Civ. P. 37(c)(1).  First, the Hillers did not

5    disclose Mr. Thorne's expert report to Allstate until April 20, 2012.  As of that

6    date, Allstate had a mere seven (7) days to engage in follow-up discovery prior to

7    the April 27, 2012 discovery cutoff.  Second, the Hillers did not disclose the report

8    until a day *after* Allstate filed its motion for summary judgment.  Accordingly,

9    Allstate was precluded from addressing Mr. Thorne's opinions in its opening

10   briefing and has been handicapped in its ability to counter Mr. Thorne's opinions

11   in subsequent filings.  Third, the record reflects that the Hillers have relied upon

12   Mr. Thorne's opinions to a significant degree in in their own summary judgment

13   filings.  The Court finds that this circumstance has created an uneven playing field

14   for purposes of the pending cross-motions for summary judgment.   Finally, the

15   Court notes that the Hillers' late disclosure has prejudiced Allstate's efforts to

16   effectively engage a rebuttal expert.  Indeed, the record indicates that Allstate's

17   rebuttal expert, David Huss, prepared and submitted his rebuttal report pursuant to

18   the Court's scheduling order some three weeks before Mr. Thorne's report was

19   disclosed on April 20, 2012.  This not only required Mr. Huss to draw broad

20   assumptions about Mr. Thorne's *anticipated* opinions, but also afforded Mr.

Thorne an opportunity to respond to Mr. Huss's opinions when formulating his own.  In view of the foregoing, the Court finds that the Hillers' failure to timely disclose Mr. Thorne's expert report was not "harmless" under Rule 37(c)(1).

Having concluded that the Hillers violated Rule 37(c)(1), the Court must consider whether exclusion of Mr. Thorne's testimony is an appropriate remedy. The Ninth Circuit's decision in *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255 (9th Cir. 1998) is instructive.  In that case, the trial Court excluded the testimony of a plaintiff's expert witness for purposes of a pending summary judgment motion after the plaintiff disclosed the expert's report approximately six weeks after the deadline established in the Court's scheduling order.  143 F.3d at 1258.  Moreover, like the Hillers, the plaintiff in *Quevedo* submitted the expert report for the first time in conjunction with a summary judgment filing and "never sought an extension of time from the district court."  *Id.*

The Ninth Circuit has identified several factors that the district court may consider in deciding whether to impose Rule 37(c)(1)'s preclusion sanction. Those factors include (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.  *See, e.g., Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997); *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

ORDER RE: SUMMARY JUDGMENT ~ 34

However, if the sanction amounts to dismissal of a claim, the district court is required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith and also to consider the availability of lesser sanctions. *R & R Sails, Inc.,* 673 F.3d at 1247.

The Court does not find any bad faith or willfulness, nor is it dismissing or effectively dismissing a claim. The Court has considered lesser sanctions than witness preclusion.  In view of the prejudice to Allstate discussed above, the Court concludes that exclusion of Mr. Thorne's testimony is an appropriate remedy. *See Quevedo*, 143 F.3d at 1258.  Nevertheless, it bears mentioning that there is little to suggest that this remedy actually prejudices the Hillers' case.  Mr. Thorne's testimony appears to focus primarily upon pure questions of law that are typically reserved for the court (*i.e.*, whether the loss at issue should have been covered under the Hillers' homeowner's insurance policy and whether Allstate complied with Washington's Insurance Fair Conduct Act).

Attorney fees and expenses will not be assessed, witness preclusion is enough of a sanction.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Summary Judgment (ECF No. 45) is **GRANTED in part** as to Plaintiffs' claim for declaratory relief and **DENIED in part**

ORDER RE: SUMMARY JUDGMENT ~ 35

as to Plaintiffs' claims for damages arising under their IFCA, CPA and bad faith allegations;

2. Defendant's Motion for Summary Judgment (ECF No. 38) is **DENIED in part** as to Plaintiffs' claim for declaratory relief and **GRANTED in part** as to Plaintiffs' claims for damages arising under their IFCA, CPA and bad faith allegations;

3. Defendant's Motion to Exclude Testimony of Expert Thorne (ECF No. 34) is **GRANTED**.

4. Plaintiff's Motion to Expedite (ECF No. 70) is **DENIED** as moot.

The District Court Executive is hereby directed to enter this Order and provide copies to the parties.

**DATED** this 19th day of June, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER RE: SUMMARY JUDGMENT ~ 36